UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSEMARY HEATHER MILLER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MADRUGA, *et al.*,<br><br>　　　　Defendants. | Case No. 1:23-cv-00616-KES-FJS (PC)<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS ACTION, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM, FAILURE TO OBEY COURT ORDER, AND FAILURE TO PROSECUTE<br><br>(ECF No. 16)<br><br>FOURTEEN (14) DAY DEADLINE |

I.      BACKGROUND

Plaintiff Rosemary Heather Miller ("Plaintiff") is a state prisoner proceeding *pro se* in this civil rights action under 42 U.S.C. § 1983.

On March 3, 2026, the Court screened the complaint and found that it failed to state a cognizable claim for relief. (ECF No. 16.) The Court issued an order granting Plaintiff leave to file a first amended complaint or a notice of voluntary dismissal within thirty (30) days. (*Id.*) The Court expressly warned Plaintiff that the failure to comply with the Court's order would result in a recommendation for dismissal of this action, with prejudice, for failure to obey a court order and for failure to state a claim. (*Id.*) Plaintiff failed to file an amended complaint or otherwise communicate with the Court, and the deadline to do so has expired.

///

1

II.    FAILURE TO STATE A CLAIM

A.    Screening Requirement

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

B.    Plaintiff's Allegations

Plaintiff is currently housed at the Central California Women's Facility in Chowchilla, California, where the events in the complaint are alleged to have occurred. Plaintiff names the following defendants: (1) Lieutenant R. Madruga; (2) Lieutenant C. Corda; (3) Associate Warden M. Dotson; and (4) Chief Deputy Warden S. Zawolkow.

In Claim I, Plaintiff alleges that on October 24, 2021, at approximately 1500 hours, Defendant Corda presided over Plaintiff's disciplinary hearing on charges written by Defendant Madruga. Plaintiff was charged with "Willfully Obstructing a Peace Officer in the Performance

2

of Duties." The California Code of Regulations ("CCR") cited, 3005(d)(1), does not list this specific offense. The hearing was conducted in the game room of Building 509, Plaintiff's housing unit, not the Facility Program Office. The unit game room is equipped with the Audio Visual Surveillance System ("AVSS"). Defendant Corda denied Plaintiff's request for witnesses but stated she was reducing the charge to an administrative violation with the specific act of "Disobeying a Direct Order." Plaintiff then returned to her room.

At approximately 2000 hours, Plaintiff was ordered by a correctional sergeant to report to the Program Office per Defendant Corda. Upon her arrival to the program office, Plaintiff was informed by Defendant Corda that she was reversing her prior decision to find her guilty of the administrative violation and was instead finding her guilty of the original serious violation. Defendant Corda stated numerous inmates were alleging racism towards Defendant Corda for finding Plaintiff not guilty of the serious violation, so she was reversing her decision. There were numerous inmates outside of the Facility Program Office when Plaintiff arrived, many of whom were yelling at Defendant Corda.

When Plaintiff asked how Defendant Corda could reverse her decision when the hearing was completed, Defendant Corda stated she could do what she wanted. Compounding Plaintiff's due process violation was the denial of her witness. Plaintiff had requested a witness during the hearing, which was denied by Defendant Corda. Defendant Corda did not document her denial of the witness, as is mandated by statute and precedent. The witness Plaintiff requested, the housing officer assigned to Building 509 on the date of the incident, could have corroborated Plaintiff's defense: that the officer had ordered her to return to her room. Plaintiff had not insisted on her witness being present once Defendant Corda indicated she was finding Plaintiff guilty of an administrative violation. However, since the requested witness could have corroborated her defense, the witness should have been allowed to testify as to what order(s) was/were given or not given. Plaintiff was not allowed to present her defense to the serious rules violation and the reasons the witness was not allowed were not documented. Further, Defendant Corda indicated in the record of the hearing that Plaintiff had not requested witnesses, but admits she had requested witnesses when interviewed on the grievance Plaintiff submitted.

3

Following the submission of the hearing to the Chief Disciplinary Officer, whose job it is to audit the findings and ensure due process is followed, Defendant M. Dotson did not independently review the AVSS footage to ascertain whether the charge for which Plaintiff was found guilty was appropriate. Defendant Dotson did not take any action to correct the incorrect violation code, CCR 3005(d)(1), which does not list "Willfully Obstructing a Peace Officer in the Performance of Duties" as a specific act that can be charged. Defendant Dotson failed to ensure that Plaintiff's rights were not violated by only approving lieutenants to act as Senior Hearing Officers ("SHO") who have received proper training. As the Chief Disciplinary Officer, Defendant Dotson was charged with approving lieutenants to act as SHO.

Following receipt of her final copies, Plaintiff filed a grievance on the underlying issues. Chief Deputy Warden S. Zawolkow was tasked with conducting an interview and answering Plaintiff's grievance. Defendant Zawolkow denied Plaintiff's grievance and failed to open a staff complaint against Defendant Corda, which is his direct responsibility. Defendant Zawolkow additionally failed to address the due process violations Plaintiff asserted in her grievance.

In Claim II, Plaintiff alleges that on September 16, 2021, at approximately 16:24:53 hours, staff in inmate housing unit 509 at CCWF activated their alarm, setting off the audible alarm in the unit. The AVSS recorded the events in "D" hallway of Building 509, the location where all events relative to the disciplinary charges occurred. The AVSS shows inmates in Building 509 did not follow the protocol of immediately getting down and obtaining a seated position when the alarm sounded. Plaintiff is, at all times relevant herein, assigned to room 30 in Building 509, which is located in "D" Hallway. The AVSS footage shows Plaintiff in her assigned hallway when an obvious commotion occurs between some people approximately eight yards from her. The AVSS footage shows the hallway was crowded with people and a laundry cart.

A physical altercation between two people is alleged in the Rules Violation Report Plaintiff received. A review of the actual AVSS footage, however, does not show any type of altercation. Instead, it shows a crowded hallway and an obstructed view due to the laundry cart. During the commotion and alarm, Plaintiff observed a correctional officer giving verbal orders. The correctional officer ordered Plaintiff to enter her room, which was in the vicinity. Plaintiff

4

complied with the verbal orders she was given despite the fact they did not comply with the standard protocol of obtaining a seated position during an alarm. Obtaining a seated position with the number of people, laundry cart, and commotion would have risked physical harm and caused a hazard to those nearby. A review of the AVSS footage shows that when the commotion began and the alarm sounded, numerous individuals began running out of the hallway. Getting down in such a chaotic and dangerous situation could have resulted in Plaintiff or others getting trampled.

Upon completion of the institutional count, at approximately 1700 hours, Defendant Madruga summoned Plaintiff and other inmates to the Lieutenant's Office at C Program. Defendant Madruga was on duty as the Facility Lieutenant at the time of the incident in Building 509. Defendant Madruga questioned Plaintiff about the incident and stated she had viewed the AVSS footage prior to questioning Plaintiff. Defendant Madruga told Plaintiff she would not be receiving a Rules Violation Report for not getting down during an alarm as she had been instructed to enter her room by a correctional officer. Defendant Madruga stated she was just trying to ascertain what had occurred during the commotion in "D" Hallway of Building 509.

Several hours later, at approximately 2300 hours, Defendant Madruga summoned Plaintiff and multiple other inmates to the Program Office for more questioning. Defendant Madruga again stated that no one was in trouble, she was simply trying to determine what had occurred. During this secondary questioning, two inmates in the room admitted to being involved in a physical altercation. Neither Plaintiff nor the other inmates present had any further relevant information to provide. Defendant Madruga again stated the individuals not admitting to being in a physical altercation would not be receiving a Rules Violation Report.

Despite Defendant Madruga's statements, Plaintiff received a Rules Violation Report authored by Defendant Madruga where the AVSS footage was the sole source of information and evidence against Plaintiff. The Rules Violation Report does not mention the officer giving direct orders to individuals in "D" hallway of Building 509 to enter their rooms, to which Plaintiff had complied. The Rules Violation Report charges Plaintiff with a violation of CCR 3005(d)(1), a section of the CCR that does not list "Willfully Obstructing a Peace Officer in the Performance of Duties" as a specific act that can be charged. The two inmates who admitted to being in the

5

physical altercation were not written up, despite their own admission. The AVSS footage clearly shows at least forty (40) inmates not getting down during the alarm, yet Defendant Madruga chose to issue Rules Violation Reports to only fifteen (15) inmates, which constitutes a due process violation due to unequal distribution of punishment.

As to both Claims I and II, Plaintiff alleges that as a result of the disciplinary sanctions, Plaintiff lost chairperson and membership positions on several committees, panels, and councils, the opportunity for a clemency hearing, eligibility for many of the facility programs which require substantial periods of disciplinary-free conduct, sixty-one (61) days of credits, and thirty (30) days of quarterly package privileges.

Plaintiff requests the dismissal of the Rules Violation Report given the number of due process violations associated therewith, reinstatement to the positions she held prior to the finding of guilt, the restoration of the 61 days of credits Plaintiff was assessed, and any other relief the Court deems just and proper.

C.    Discussion

Plaintiff's complaint fails to state a cognizable claim for relief under 42 U.S.C. § 1983.

1.    *Supervisory Liability*

Insofar as Plaintiff is attempting to sue any defendant based solely upon his or her supervisory role, she may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of *respondeat superior*. *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989*); accord Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales*, 567 F.3d at 570. Supervisory

liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by *Farmer v. Brennan*, 511 U.S. 825 (1970). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Staple*y, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

Plaintiff alleges that Defendant Dotson, as Chief Disciplinary Officer, failed to ensure Plaintiff's rights were not violated by failing to only approve lieutenants who had received proper training as Senior Hearing Officers. A "failure to train" or "failure to supervise" theory can be the basis for a supervisor's liability under § 1983 in only limited circumstances, such as where the failure amounts to deliberate indifference. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 387–90 (1989). To establish a failure-to-train/supervise claim, a plaintiff must show that "'in light of the duties assigned to specific officers or employees, the need for more or different training [or supervision] [was] obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policy-makers . . . can reasonably be said to have been deliberately indifferent to the need.'" *Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002) (quoting *Canton*, 489 U.S. at 390).

Ordinarily, a single constitutional violation by an untrained employee is insufficient to demonstrate deliberate indifference for purposes of failure to train. *Connick v. Thompson*, 563 U.S. 51, 62 (2011). Instead, a plaintiff must usually demonstrate "[a] pattern of similar constitutional violations by untrained employees," *id.*, unless the need for training is "so obvious" and "so likely to result in the violation of constitutional rights," that "the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury," *Canton*, 489 U.S. at 390.

Here, Plaintiff's complaint fails to state a cognizable claim based upon a theory of failure to train or supervise. At best, Plaintiff alleges that her due process rights were violated on a single occasion by one Senior Hearing Officer, and there is no indication from Plaintiff's complaint that the alleged failure to train or supervise was obvious and likely to result in a constitutional violation.

### 2. *Grievance Process*

Plaintiff alleges that Defendant Zawolkow denied her grievance, failed to open a staff complaint against Defendant Corda, and failed to address the due process violations Plaintiff asserted in her grievance.

Plaintiff cannot pursue any claims against prison staff based solely on the processing and review of her inmate appeals. Plaintiff does not have a constitutionally protected right to have her appeals accepted or processed. *Ramirez v. Galaza,* 334 F.3d 850, 860 (9th Cir.2003); *Mann v. Adams,* 855 F.2d 639, 640 (9th Cir.19 88). The prison grievance procedure does not confer any substantive rights upon inmates and actions in reviewing appeals cannot serve as a basis for liability under section 1983. *Buckley v. Barlow,* 997 F.2d 494, 495 (8th Cir.1993); *see also Wright v. Shannon,* No. 1:05-cv-01485-LJO-YNP PC, 2010 WL 445203, at *5 (E.D. Cal. Feb. 2, 2010) (plaintiff's allegations that prison officials denied or ignored his inmate appeals failed to state a cognizable claim under the First Amendment). Denial or refusal to process a prison grievance is not a constitutional violation. *Rushdan v. Gear,* No. 1:16-cv-01017-BAM (PC), 2018 WL 2229259, at *6 (E.D. Cal. May 16, 2018).

Accordingly, Plaintiff fails to state a cognizable claim arising out of the screening or processing of her grievance.

### 3. *Fourteenth Amendment*

#### a. *Due Process*

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least twenty-four (24)

8

hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. *Wolff*, 418 U.S. at 563-71. In addition, "[s]ome evidence" must support the decision of the hearing officer. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). The standard is not particularly stringent and the relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached . . . ." *Id.* at 455–56 (emphasis added).

Plaintiff alleges that she was charged and convicted of a specific act that could not be charged under the cited regulation and was denied her requested witness. In addition, Plaintiff alleges that Defendant Corda failed to record that Plaintiff requested witnesses or to document the reasons the requested witness was not allowed. While Plaintiff may be able to state a cognizable due process claim against Defendant Corda, this claim is barred by the favorable termination rule, as discussed below.

b.    *Equal Protection*

Plaintiff alleges that the AVSS footage shows at least forty inmates not getting down during the alarm, yet Defendant Madruga chose to issue Rules Violation Reports to only fifteen inmates, constituting a due process violation due to unequal distribution of punishment. Plaintiff may be attempting to allege a claim for violation of the Equal Protection Clause.

The Equal Protection Clause requires that persons who are similarly situated be treated alike. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439, (1985); *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008). An equal protection claim may be established by showing that defendants intentionally discriminated against a plaintiff based on his membership in a protected class, *Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 702– 03 (9th Cir. 2009); *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003), or that similarly situated individuals were intentionally treated differently without a rational relationship

9

to a legitimate state purpose, *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 601–02 (2008); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008).

Plaintiff fails to state a cognizable claim against any defendant for violation of the Equal Protection Clause. Plaintiff does not allege that she was discriminated against because of her membership in any protected class.

### 4.    *Favorable Termination Rule*

It has long been established that state prisoners cannot challenge the fact or duration of their confinement in a section 1983 action; habeas corpus petitions are the sole path to such remedies. *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005). Often referred to as the favorable termination rule or the *Heck* bar, this exception to section 1983's otherwise broad scope applies whenever state prisoners "seek to invalidate the duration of their confinement-either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody." *Wilkinson*, 544 U.S. at 81; *Heck v. Humphrey*, 512 U.S. 477, 482, 486–87 (1994); *Edwards v. Balisok*, 520 U.S. 641, 644 (1997). Thus, "a state prisoner's [section] 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Id.* at 81–82.

In this action, Plaintiff argues that violation of her due process rights warrants the dismissal of the Rules Violation Report and restoration of her lost credits. These claims are barred by *Heck v. Humprey*, 512 U.S. 477 (1994). *Compare Edwards v. Balisok*, 520 U.S. 641, 646 (1987) (holding that § 1983 claim is not cognizable because allegations of procedural defects and a biased hearing officer implied the invalidity of the underlying prison disciplinary sanction of loss of good-time credits), *with Ramirez v. Galaza*, 334 F.3d 850, 858 (9th Cir. 2003) (holding that the favorable termination rule of *Heck* and *Edwards* does not apply to challenges to prison disciplinary hearings where the administrative sanction imposed does not affect the overall length of confinement and, thus, does not go to the heart of habeas).

10

Plaintiff alleges that she was subjected to a Rules Violation Report that charged her with a violation of an act that could not be charged under the cited regulation and the denial of her request for witnesses. She was ultimately found guilty of a serious violation, resulting in the loss of credits and loss of chairperson and membership positions on various committees, panels, and councils, among other consequences. A judgment in favor of Plaintiff on her claim will necessarily imply the invalidity of the disciplinary action, and Plaintiff has not demonstrated that the disciplinary action has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *See e.g.*, *Cox v. Clark*, 321 Fed. Appx. 673, 676 (9th Cir. 2009) (affirming dismissal of due process claim pursuant to *Balisok* to the extent that plaintiff sought restoration of good-time credits and the reversal of a disciplinary decision); *McCoy v. Spidle*, 2009 WL 1287872, *7–*8 (E.D. Cal. May 6, 2009) ("A challenge under section 1983, seeking only damages and declaratory relief for procedural due process violations is also barred if the nature of the challenge would necessarily imply the invalidity of the deprivation of good-time credits.").

Accordingly, Plaintiff's claims related to the challenged Rules Violation Report and resulting loss of credits are barred by the favorable termination rule.

III.    FAILURE TO PROSECUTE AND FAILURE TO OBEY COURT ORDER

A.    Legal Standard

Local Rule 110 provides that "[f]ailure . . . of a party to comply with these Rules or with any order of the Court may be grounds for imposition by the Court of any and all sanctions . . . within the inherent power of the Court." District courts have the inherent power to control their dockets and "[i]n the exercise of that power they may impose sanctions including, where appropriate, . . . dismissal." *Thompson v. Hous. Auth.*, 782 F.2d 829, 831 (9th Cir. 1986). A court may dismiss an action, with prejudice, based on a party's failure to prosecute an action, failure to obey a court order, or failure to comply with local rules. *See, e.g.*, *Ghazali v. Moran*, 46 F.3d 52, 53–54 (9th Cir. 1995) (dismissal for noncompliance with local rule); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260–61 (9th Cir. 1992) (dismissal for failure to comply with an order requiring

11

amendment of complaint); *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130–33 (9th Cir. 1987) (dismissal for failure to comply with court order).

In determining whether to dismiss an action, the Court must consider several factors: (1) the public's interest in expeditious resolution of litigation; (2) the Court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986); *Carey v. King*, 856 F.2d 1439, 1440 (9th Cir. 1988).

B.      Discussion

Here, Plaintiff's first amended complaint is overdue, and she failed to comply with the Court's order. The Court cannot effectively manage its docket if Plaintiff ceases litigating her case. Thus, the Court finds that both the first and second factors weigh in favor of dismissal.

The third factor, risk of prejudice to defendant, also weighs in favor of dismissal, since a presumption of injury arises from the occurrence of unreasonable delay in prosecuting an action. *Anderson v. Air W.*, 542 F.2d 522, 524 (9th Cir. 1976). The fourth factor usually weighs against dismissal because public policy favors disposition on the merits. *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002). But "this factor lends little support to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes progress in that direction." *In re Phenylpropanolamine (PPA) Products Liability Litigation*, 460 F.3d 1217, 1228 (9th Cir. 2006) (citation omitted). Such is the case here.

Finally, the Court's warning to a party that failure to obey the court's order will result in dismissal satisfies the "considerations of the alternatives" requirement. *Ferdik*, 963 F.2d at 1262; *Malone*, 833 at 132–33; *Henderson*, 779 F.2d at 1424. The Court's March 3, 2026, screening order expressly warned Plaintiff that her failure to file an amended complaint would result in a recommendation of dismissal of this action, with prejudice, for failure to obey a court order and for failure to state a claim. (ECF No. 16.) Thus, Plaintiff had adequate warning that dismissal could result from her noncompliance.

Additionally, at this stage in the proceedings there is little available to the Court that would constitute a satisfactory lesser sanction while protecting the Court from further

unnecessary expenditure of its scarce resources. Although Plaintiff is not proceeding *in forma pauperis* in this action, it appears that monetary sanctions will be of little use and the preclusion of evidence or witnesses is likely to have no effect given that Plaintiff has ceased litigating her case.

IV.     CONCLUSION AND RECOMMENDATION

Accordingly, the Court finds that dismissal is the appropriate sanction and HEREBY RECOMMENDS that this action be dismissed, with prejudice, for failure to state a claim pursuant to 28 U.S.C. § 1915A, for failure to obey a court order, and for Plaintiff's failure to prosecute this action.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these Findings and Recommendation, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Objections, if any, shall not exceed fifteen (15) pages or include exhibits. Exhibits may be referenced by document and page number if already in the record before the Court. Any pages filed in excess of the 15-page limit may not be considered. The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **April 15, 2026**      _____

FRANK J. SINGER
UNITED STATES MAGISTRATE JUDGE

13